# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TESLA, INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N21A-09-001 CLS |
| THE DELAWARE DIVISION OF | ) | |
| MOTOR VEHICLES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| | ) | |

Date Submitted: June 16, 2022
Date Decided: September 23, 2022

*Upon Appellant's Appeal from the Delaware Division of Motor Vehicle's Denial of Appellant a Dealer's License.* **AFFIRMED.**

## OPINION

Kelly E. Farnan, Esquire, and Tyler E. Cragg, Esquire, Richards, Layton & Finger, P.A., Wilmington, DE, 19801, Attorneys for Appellant, TESLA.

George T. Lees III, Esquire, Delaware Department of Justice, Dover, Delaware, 19901, Attorney for Appellee, State of Delaware, the Delaware Division of Motor Vehicles.

**SCOTT, J.**

1

## INTRODUCTION

Before the Court is Tesla, Inc.'s ("Tesla") appeal of a final order from the Delaware Division of Motor Vehicle ("DMV") denied Dealer License Application ("2020 Dealer Application"). Respondent, Tesla Motors, Inc., is a California company that designs, develops, manufactures, and distributes electric vehicles. Tesla vehicles are sold in galleries and shopping mall locations, and Tesla does not maintain an inventory of vehicles. To purchase a Tesla vehicle, consumers must place a reservation for a vehicle which is later manufactured to their specifications. Tesla does not operate a dealership with cars on the lot and sells its vehicles directly to consumers. Tesla maintains a gallery in Delaware, located in the Christiana Mall. Upon filing for a dealer's license and after a hearing before a Hearing Officer, its application was denied because the Delaware Motor Vehicle Franchising Practices Act ("Franchising Act") prohibits manufacturers of new cars to sell directly to consumer. Tesla now appeals the final order executed by DMV denying it a dealer's license.

## FACTS

While the appeal from this case stems from Tesla's 2020 dealer application, it is important to note Tesla requested approval of its "Gallery" at the Christiana Mall in 2019. According to the Division's denial letter of Tesla's 2020 dealer license, in a letter from Tesla dated January 15, 2019, Tesla acknowledged the existence of

2

6 Del. C. § 4913 ("Franchise Act"), which prohibits a manufacturer from directly or indirectly owning an interest in a dealer or dealership, to operate or control a dealership, or to act in the capacity of a dealership. The record does not include the documents from the previous application for the Christiana Mall Gallery.

Moving forward almost two years after operating its Gallery, Tesla submitted its application for a dealer's license on December 21, 2020. In a letter to Tesla dated April 19, 2021, the Division denied the application under § 4913 of the Franchise Act. Tesla requested a hearing in a letter dated April 30, 2021 and asserted substantive grounds for its objections to the denial. Specifically, Tesla asserted the DMV's decision constituted reversible legal error because the franchising statute only bars manufacturers engaging in franchising practices from acting as motor vehicle dealers. Additionally, Tesla asserted the denial deprived Tesla of fundamental rights, thwarts the interests of the community and reliance on the Franchise Act by the DMV to deny its application was misplaced. DMV made Tesla aware the dealer licensing hearing would be two hours, explaining Tesla would be given one hour to present its evidence and arguments while the DMV also received one hour. Tesla objected to the two-hour procedure as it needed more than its one hour and DMV allowed for a four-hour hearing.

On June 23, 2021, the administrative hearing requested by Tesla was heard in Dover, Delaware. Tesla was represented by Mr. Auerbacher, Catherine Chio,

Esquire and Zachary Kahn, Esquire. Karen Carson, Chief of Compliance and Investigations testified for the DMV. For Tesla, Professor Daniel A. Crane testified against DMV's objection. Zachary Kahn testified as a witness, as well as three citizens who supported Tesla being granted a dealer's license.

At the closing of the hearing, DMV argued the correct method review for Tesla was to file a Declaratory Judgment Action pursuant to 10 Del. C. § 6501 and further argued the Delaware Legislature was the proper entity to resolve the issue.

On July 23, 2021, the Hearing Officer issued the decision affirming the denial of Tesla's 2020 Dealer Application. Subsequently, On August 9, 2021, Division Director Jana Simpler issued a final decision upholding the Hearing Officers decision. Tesla then filed this appeal on September 3, 2021.

On June 16, 2022, this Court heard oral argument on this matter.

## PARTIES CONTENTIONS

### a. Tesla's Position

Tesla, in its opening brief, presents four major arguments: (1) Tesla is entitled to a dealer's license because 21 Del. C. ("Licensing Act") authorizes licensure of non-franchising manufacturers, (2) The Division exceeded its authority because the licensing act does not authorize denial of a license for noncompliance with the Franchising Act, (3) Nothing in the Franchising Act prohibits non-franchising

4

manufacturers from selling vehicles directly, and (4) DMV administrative review procedures violate Delaware law.

First, Tesla argues the Licensing Act authorizes licensure of non-franchising manufacturers because the licensing act "prohibits only franchising manufacturers from obtaining a license, not non-franchising manufacturers." To reach this conclusion, Tesla asserts the language of the Licensing Act demands Tesla is not considered a dealer. The language of the Licensing Act prescribes a dealer shall not include "either a manufacturer or distributor who sells or distributes vehicles to licensed dealers or a person employed by a manufacturer or distributor to promote the sale of the vehicles of the manufacturer or distributor, if that manufacturer, distributor or person does not sell vehicles to retail buyers."[1] Therefore, as a non-franchising manufacturer that does not sell its vehicles through licensed dealers, Tesla argues it is not prohibited from obtaining a dealer's licenses.

Next, Tesla argues the Licensing Act does not authorize denial of a license for noncompliance with the Franchising Act, so the Division exceeded its authority by denying Tesla's Application on the grounds of a Franchising Act violation. Tesla cites the Licensing Act to support a license may be denied for the specific reasons

---

[1] 21 Del. C. § 6301(3)(f) (2017)

5

contained in the statute.[2] None of the reasons listed in the Licensing Act for denial of a license include failure to comply with the Franchising Act, therefore, Tesla argues the 2020 Dealer Application may not denied on such grounds.

Additionally, Tesla argues there is nothing in the Franchise Act prohibits non-franchising manufacturers from selling vehicles directly. The Franchising Act prohibits a manufacturer to act in the capacity of a dealer except as provided in the section. Tesla argues it is not a manufacturer as prescribed under the Franchising Act. The definition of manufacturer, as applied to the Franchising Act is "any person,

---

[2] A dealer license applied for or issued pursuant to this chapter may be denied, suspended, or revoked for any 1 of the following reasons:
(1) Material misstatement or omission on the application for a dealer license.
(2) Failure to maintain an established place of business, business phone or Division of Revenue Dealer Business License.
(3) Failure to comply subsequent to receipt from the Division of a cease and desist order or a written warning or arrest.
(4) Failure to comply with this title or Title 30.
(5) Conviction of the dealership licensee or licensees of any fraudulent or criminal act in violation of Title 11 or Title 30 in connection with the business of selling vehicles.
(6) The Department makes a determination, so far as can be ascertained, that the applicant or licensee no longer meets the standard set forth in § 6312 of this title.
(7) Failure to maintain a service facility, if the licensee is a dealer of new recreational vehicles. Recreational vehicle dealers with multiple locations in Delaware may maintain a service facility at 1 location to satisfy this requirement.
(8) The applicant was a previous holder of a license that was suspended or revoked by the Department and the terms of such suspension have not been satisfied.
(9) The applicant or licensee solely employs call forwarding, telephone answering services and/or mail forwarding services during scheduled business hours or otherwise sells motor vehicles from a remote or otherwise unlicensed location. 21 DE Code § 6313 (2018)

resident or nonresident, who manufactures or assembles new motor vehicles, or imports for distribution through distributors of motor vehicles, including any person, partnership or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said motor vehicles." Tesla argues it does not assemble new motor vehicles because the definition of new motor vehicle "means a vehicle which has been sold to a new motor vehicle dealer and which has not been used for other than demonstration purposes and on which the original title has not been issued from the new motor vehicle dealer." Because Tesla's vehicles are not sold to a new motor vehicle dealer because they sell direct to consumer, Tesla argues it cannot be considered a manufacturer under the Franchising Act, so the Statute does not apply to it.

Lastly, Tesla argues administrative review procedures violated Delaware law because the Division has failed to provide rules for its hearings. Tesla claims the Hearing Officer's denial of discovery was error.

### b. Division of Motor Vehicle's Position

The DMV argues four main points: (1) Tesla's claims seeking statutory interpretation are properly raised in a declaratory judgment action, not in this appeal, (2) Tesla's 2020 Dealer Application was properly denied because manufacturers are statutorily prohibited from owning dealerships, DMV did not exceed its authority by considering all laws of the State when making a licensing decision, and Tesla may

7

not obtain a license for prohibited conduct by the State, (3) the procedural process Tesla complains of is proper, (4) relief should not be granted because Tesla has unclean hands.

The DMV first discusses Tesla's claims for statutory interpretation of the Franchising Act. DMV claims the need for Tesla to file a Declaratory Judgment Action was raised during the hearing below. Tesla allegedly chose to forgo filing an action to declare its rights under the Franchising Act. Further, DMV alleges Tesla's efforts for this Court to interpret the Franchising Act violates the requirements of 10 Del. C. § 6511[3] because it seeks interpretation within the purview of the Public Service Commission. The Public Service Commission, according to the DMV, is not and cannot be joined as a party to this administrative appeal and further, the Delaware Automobile and Truck Dealers' Association needs to be a party as their rights may be affected by the interpretation. Because these two parties are

---

[3] Parties.
When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged unconstitutional, the Attorney General of the State shall also be served with a copy of the proceeding and be entitled to be heard.

indispensable, dismissal of the claims for statutory interpretation is proper, according to DMV.

Next, DMV argues Tesla's application was properly denied for the three following reasons: (1) manufacturers are statutorily prohibited from owning dealerships, (2) the DMV may consider all the laws of the State in making its licensing decisions, and (3) manufacturers may not obtain a license to sell vehicles directly when such conduct is statutorily prohibited. DMV argues that Tesla cites to certain provisions of the Franchising Act, however, ignores the clear language regarding the purpose of the act. Specifically, the Franchising Act denotes its purpose is to "regulate vehicle manufacturers, distributors or wholesalers . . . and to regulate franchises issued by the aforementioned." DMV asserts this language makes clear the legislation applies to manufacturers regardless of their entering into franchising agreements. Further, DMV points to Section 4713(b)(14) which prohibits any manufacturer from directly or indirectly owning an interest in a dealer or dealership; or operate or control a dealer or dealership; or act in the capacity of a dealer except as provided by this section. DMV contends it did not exceed its authority when it considered all the laws of the State in making its licensing decision. DMV asserts 21 Del. C. § 6312[4] makes clear that a dealer's license issued by DMV

---

[4] "Upon receiving a dealer license application for approval, and satisfied that the applicant is of good character and, so far as can be ascertained, the applicant has

must comply with all law of Delaware and other states. Subsequently, because manufacturers may not obtain a license to sell vehicles directly to consumer because it is statutorily prohibited by Delaware law, the DMV may not issue Tesla a dealer license because their actions must follow Delaware laws.

Additionally, DMV argues the DMV procedural process is proper. DMV acknowledges it nor are its hearings are subject to the Administrative Procedures Act. However, the DMV maintains, in opposition to Tesla's allegations, it does have established rules for hearing and has operated under those rules. As an example of such rules, DMV explains dealer licensing hearing are two hours long, with each side afforded an equal amount of time and hearing rules do not provide for any discovery. Aside from those rules, Tesla was afforded extra time for its dealer license hearing. Additionally, Tesla cannot demonstrate where it requested the Hearing Officer permit discovery, therefore, DMV asserts the issue regarding permitted discovery was not properly raised below and thus improper for appeal.

---

complied with and will comply with, the laws of this and other states, the Department shall approve the application and issue a dealer license. A license entitles a dealer to carry on and conduct the business of a dealer during the calendar year in which the license is issued. Franchised new vehicle dealers must provide the Division a copy of the franchise agreement, or, in the case of a recreational vehicle dealer, a manufacturer-dealer agreement, prior to being licensed as a new vehicle dealer."

Finally, DMV argues relief should not be granted because Tesla has unclean hands. DMV contends throughout the hearing process and this appeal, Tesla operated in a manner inconsistent with the Delaware Freedom of Information Act ("FOIA"). Tesla allegedly, after being dissatisfied with accommodations, engaged in an active campaign, through their attorney providing Westlaw cases to Mr. Auerbacher, to utilize the FOIA in a manner specifically exempted by the statute. Unfortunately, DMV's assertion of Tesla's unclean hands as a defense is an equitable one, which this Court does not have jurisdiction to acknowledge.

## STANDARD OF REVIEW

When this Court reviews a procedural decision of the DMV or the Director of the DMV, which in this case is a discretionary matter (as opposed to a factual decision of the Hearing Officer that would require a substantial evidence review), the Court must consider whether the Director abused their discretion in rendering its decision.[5] A procedural decision by an administrative agency or head of an administrative agency is not an abuse of discretion "unless it is based on clearly unreasonable or capricious grounds" or the decision "exceeds the bounds of reason in view of the circumstances and had ignored recognized rules of law or practice so

---

[5] *Funk v. UIAB*, 591 A.2d 222, 225 (Del.1991) (finding no abuse of discretion where Board refused to hear appeal on its own motion after Board found that claimant's appeal was untimely because it was not filed within the ten-day limit set by statute for such appeals).

11

as to produce injustice."[6] Absent an abuse of discretion, the Court must affirm the judgment of the Director if it did not otherwise commit an error of law.[7]

## ANALYSIS

### I. Order from Director of DMV

The Director's decision to deny Tesla a dealer license is discretionary as the language of 21 Del. C. § 6315 (a) prescribes, "After the hearing, the Director, upon receiving a decision from the hearing officer upholding the Division's position, *may* suspend or revoke a dealer license, deny a renewal or refuse to approve an application." (Emphasis added).[8] As a result, this Court may only apply the abuse of discretion standard of review. Therefore, so long as there is no abuse of discretion and there was no legal error in its order, the Court must affirm the decision.

#### A. No Legal Error

The Court finds that the Director's decision is free from legal error in denying Tesla's dealer license. The Director's August 8, 2021, decision stated that she reviewed the Administrative Hearing finding by the Hearing Officer, summary of evidence, testimony received, and exhibits offered by Tesla and found Tesla would indeed be in violation of 6 Del. C. § 4913(b)(14) of the Franchising Act. Because

---

[6] *K-Mart, Inc. v. Bowles*, 1995 WL 269872, *2 (Del.Super.).
[7] *Funk*, 591 A.2d at 225.
[8] 21 Del. C. § 6315 (a)

12

Tesla would be in violation of § 4913(b)(14), Tesla would subsequently be in violation of that requirements of 21 Del. C. § 6312, which states a dealer must comply with the laws of Delaware. Additionally, the Director then weighed the interests of the State of Delaware and its citizens and found the violation of Delaware law does not outweigh the interest in encouraging and supporting sale and use of electric vehicles.

### i. Relevant Definitions

The language of 6 Del. C. § 4913(b)(14) is, "It shall be a violation of this chapter for any manufacturer: (14) To directly or indirectly own an interest in a dealer or dealership; or operate or control a dealer or dealership; or act in a capacity of a dealer except as provided by this section." Manufacturer under Title 6 is defined as, "any person, resident or nonresident, who manufactures or assembles new motor vehicles, or imports for distribution through distributors of motor vehicles, including any person, partnership or corporation which acts for and is under the control of such manufacturer or assembler in connection with the distribution of said motor vehicles."[9]

---

[9] 6 Del. C. 4902(7)

Additionally, the definition of new motor vehicle dealer or dealer "means any person or entity engaged in the business of selling, offering to sell, soliciting or advertising the sale of new motor vehicles and who holds, or held at the time a cause of action under this chapter accrued, a valid sales and service agreement, franchise or contract granted by the manufacturer or distributor for the retail sale of said manufacturer's or distributor's new motor vehicles." The definition of "new motor vehicle" is "a vehicle which has been sold to a new motor vehicle dealer and which has not been used for other than demonstration purposes and on which the original title has not been issued from the new motor vehicle dealer."[10] The definition of "Motor vehicle" means "every vehicle intended primarily for use and operation on the public roadways which is self-propelled, not including motor homes, motor home products and recreational vehicles, farm tractors and other machines and tools used in the production, harvesting and care of farm products."[11]

### ii. Hearing Officer's Analysis

Based on the plain language of 21 Del. C. § 6312[12], DMV, may enquire regarding Tesla's compliance with the laws of this State and other states and based

---

[10] 6 Del. C. 4902(8)(b)

[11] 6 Del. C. 4902 (8)(a)

[12] 21 Del. C. § 6312. **Issuance of dealer license.** Upon receiving a dealer license application for approval, and satisfied that the applicant is of good character and, so far as can be ascertained, the applicant has complied with and will comply with, the laws of this and other states, the Department shall approve the application and

14

on the reading of 21 Del. C. § 6313(6)[13] a dealer license may be denied based on noncompliance with the laws of this State.

*a. Violation of the Franchising Act*

The Franchising Act was enacted by the legislature in this State and therefore, any violation of the Franchising Act would be in violation of the laws of this State. Considering the definition of manufacturer in the Franchising Act[14] as well as the evidence and testimony, the Hearing Officer found Tesla is a "manufacturer" under Delaware law. Tesla argues it is not acting in the capacity of a manufacturer under the Franchising Act because the Franchising Act "does not reach non-franchising manufacturers that sell their vehicles directly" to consumers. Therefore, the Franchising Act does not apply to non-franchising manufacturers as Tesla does not by definition sell "new motor vehicles" as described in the statue because their vehicles are not sold to new motor vehicle dealers nor have not been used for other

---

issue a dealer license. A license entitles a dealer to carry on and conduct the business of a dealer during the calendar year in which the license is issued. Franchised new vehicle dealers must provide the Division a copy of the franchise agreement, or, in the case of a recreational vehicle dealer, a manufacturer-dealer agreement, prior to being licensed as a new vehicle dealer.

[13] 21 Del. C. § 6313. **Grounds for denying application for, or renewal of, dealer license; suspension or revocation of license.** A dealer license applied for or issued pursuant to this chapter may be denied, suspected or revoked for any 1 of the following reasons: (6) The Department makes a determination, so far as can be ascertained, that the applicant or licensee no longer meets the standard set forth in § 6312 of this title.

[14] 6 Del. C. 4902(7)

than demonstration purposes nor has the original title not been issued from the new motor vehicle dealer. Tesla uses the term "non-franchising manufacturer" to distinguish itself from other manufacturers that do have affiliated dealerships to sell their vehicles. However, "non-franchising manufacturers" is not a term defined by the legislature and as a consequence was likely not a contemplated topic as no manufacturers, up until Tesla, have sold direct to consumer. This Court cannot carve out an exception for non-franchising manufacturers because the statute does not.

Tesla fails to acknowledge that new cars may only be sold in the State of Delaware if they are in fact new motor vehicles under Delaware Law and the only Statute which clearly defines a new motor vehicle is the Franchising Act. Within that meaning, only vehicles that meet the definition for new motor vehicle qualify. Therefore, it is impossible for a new vehicle license to be granted to sell new cars without Tesla's vehicles meeting the definition of new motor vehicle. This Court agrees that Tesla's vehicles do not qualify under the definition of new motor vehicle, however, that does not lend itself to a finding that Tesla may sell their new cars just because its cars do not meet the definition. Rather, it means Tesla cannot sell its cars in the State because the only way for a dealer to sell new cars is for those cars to be considered new motor vehicles. This Court cannot change the language of the statute to include a new definition of new motor vehicle to allow Tesla's new cars to fall into the category.

*b. Tesla does not qualify as a dealer*

Based on the evidence presented to the Hearing Officer, the Hearing Officer found that testimony provided at the hearing indicated while Tesla has accurately reported it does not enter into franchise agreements with third party entities, it does have contracts with wholly owned subsidiaries. Additional testimony indicated it would be "impossible" for a parent company to enter into a franchise agreement with a wholly owned subsidiary company and Tesla's business model is direct sales between Tesla and the consumer. Based on the summation of this evidence, the Hearing Officer found "new motor vehicle dealer" as defined did not apply to Tesla. However, the Hearing Officer concluded Tesla was a manufacturer and under 6 Del. C. § 4913(b)(14), it would be a violation for any manufacturer to "directly or indirectly own an interest in a dealer or dealership; or operate or control a dealer or dealership; or acting in the capacity of a dealer except as provided by this section."

Therefore, because Tesla would be in violation of Title 21, the DMV has the authority to inquire regarding Tesla's compliance with the laws of this State and a dealer license may be denied based on a violation of the law of his State[15], the Director committed no legal error in her decision to deny Tesla a dealer license.

---

[15] 21 Del. C. 4913(b)(14).

## B. No Abuse of Discretion by the Director

A procedural decision by an administrative agency or head of an administrative agency is not an abuse of discretion "unless it is based on clearly unreasonable or capricious grounds" or the decision "exceeds the bounds of reason in view of the circumstances and had ignored recognized rules of law or practice so as to produce injustice."[16] As explained above, the decision of the Director was not based on unreasonable or capricious grounds nor did it ignore recognized rules of law. Rather the decision was based on the authority vested in the DMV by the legislature and a violation of Delaware law which would be present if the dealer license was granted. Therefore, there is no abuse of discretion present here.

## C. Even if the Standard of Review was substantial evidence, the order would meet such standard.

This Court's discretion upon appeal from an administrative agency is limited to the record before it and it does not weigh the evidence nor make its own factual findings. Based upon the record and the statute giving the Director discretion to deny a dealer license, the decision to deny Tesla's license was based upon the findings of the Hearing Officer. There is substantial evidence to support the findings of the Hearing Officer as the evidence illustrates Tesla would be in violation of the

---

[16] *K-Mart, Inc.*, 1995 WL 269872, *2 (Del.Super.).

Franchising Act, which is grounds for denial of the application as Tesla would not be compliance with the laws of this State. A reasonable mind would accept this finding based on the evidence as adequate to support a conclusion. Therefore, the Director's decision would meet the standard substantial evidence if that were the correct standard of review.

## II. Procedural Due Process Claim

The Court now turns to whether Tesla has established a procedural due process violation under Article I, §§ 7 and 9 of the Delaware Constitution. A procedural due process claim requires proof that there was some protected property interest and that deprivation of that protected interest occurred without notice and opportunity to be heard meaningfully.

Tesla does not have a property interest in a license, it merely has a unilateral expectation in receiving one. In *Hart Twin Volvo Corp*, the court stated that "a license, being within the scope of the protection afforded by the due process clause, is indeed a property right once it has been issued."[17] Therefore, a person who has not yet received a license and is applying for one under a statute that gives the issuing authority broad discretion to grant or deny license applications, like the DMV issuing dealer licenses does not have a protected property interest in the license. The

---

[17] *Hart Twin Volvo Corp. v. Commissioner of Motor Veh., Conn.Supr.*, 327 A.2d 588, 590 (1973)

entity merely has a unilateral expectation of receiving one. This reasoning was adopted by this Court in *Application of Wolstenholme*, where claimant asserted a procedural due process claim regarding a concealed carry license, that he applied to but was not issued to him. The Court found:

> A person who has never been issued a license but is applying for one under 11 Del.C. § 1441 has no more than an abstract need or desire for it. He has not yet received a license and the Court may deny the application, in accordance with its absolute discretion to grant or deny licenses to applicants who claim to meet the minimum eligibility requirements-'the Court may or may not, in its discretion, approve any application.' [citation omitted]. The Applicant never had more than a unilateral expectation of receiving a license and, therefore, did not have a property interest protected under the Due Process Clause.[18]

Just like the Court's jurisdiction to issue concealed carry licenses, DMV has the ability to grant or deny dealer licenses and such decision is in its sole discretion. Therefore, because Tesla was not granted one, it merely has an expectation of receiving a license, not a property interest in the license. There is no claim of a Due Process violation.

---

[18] *Application of Wolstenholme*, No. 92M-04-006, 1992 WL 207245, at *4 (Del. Super. Ct. Aug. 20, 1992).

## CONCLUSION

For the foregoing reasons, the decision of the Director of the DMV is

**AFFIRMED.**

    **IT IS SO ORDERED.**

_____

**Judge Calvin L. Scott, Jr.**